USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/23/2026__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONGREGATION RABBINICAL INSTITUTE OF TARTIKOV, INC., et al.,

                              Plaintiffs,

   -against-

VILLAGE OF POMONA, NY, et al.,

                              Defendants.

No. 25-CV-1471 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Congregation Rabbinical Institute of Tartikov, Inc. ("Tartikov") owns an approximately 119-acre parcel of land (the "Subject Property") in the Village of Pomona, New York (the "Village"). Tartikov seeks to build a rabbinical institute on the Subject Property, which will provide facilities to train rabbinical judges and include housing for its students and their families. Rabbi Mordechai Babad, Meilech Menczer, Jacob Hershkowitz, Chaim Shmiel Rosenfeld, and Isaac Rosenbaum (collectively with Tartikov, "Plaintiffs"), who are future students and faculty intending to study and teach at the rabbinical institute, challenge certain zoning laws enacted by the Village. Plaintiffs allege that these laws violate the First and Fourteenth Amendments to the U.S. Constitution; the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*; the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*; 42 U.S.C. §§ 1981 and 1982; as well as the New York State Constitution, New York Civil Practice Law and Rules Article 78, New York Civil Rights Law, and New York common law.

    Before the Court is Plaintiffs' Motion for a Preliminary Injunction (the "Motion"), seeking to require the Village; the Board of Trustees of the Village of Pomona (the "Board"); the Zoning

Board of Appeals of the Village of Pomona (the "ZBA"); the Planning Board of the Village of Pomona; and Louis Zummo, the Building Inspector of Pomona (collectively, "Defendants"), (1) to begin processing Tartikov's applications for its rabbinical institute and (2) to refrain from enforcing certain zoning laws that the Village has declined to repeal. (ECF No. 38.) These laws prohibit the construction of non-accredited educational institutions and housing for students with families on the Subject Property. Specifically, Plaintiffs challenge Local Law No. 1 of 2001 and Local Law No. 5 of 2004 (the "Challenged Laws") with respect to the regulations governing "educational institutions" and their "dormitories."

For the reasons that follow, Plaintiffs' Motion for Preliminary Injunction is DENIED.

## FACTUAL BACKGROUND

This litigation has a complex and protracted history. Over the course of nearly two decades, the District Court and Second Circuit of Appeals have issued several opinions addressing the issues now before this Court. The Court will not recount the full procedural history and instead focuses only on the facts relevant to resolving the Motion.

### I. Tartikov's Formation and Proposed Religious Campus

Tartikov is a New York religious corporation formed to establish a rabbinical institute. (Declaration of Michael Tauber in Supp. of Pls.' Mot. ("Tauber Decl.") ¶ 8; Declaration of Chaim Babad in Supp. of Pls.' Mot. ("C. Babad Decl.") ¶ 9.) In August 2004, Tartikov purchased an approximately 100-acre parcel in the Village, on which it intended to build its rabbinical institute, and subsequently acquired an additional 19 acres, bringing the total to approximately 119 acres. (Tauber Decl. ¶¶ 22–26; C. Babad Decl. ¶¶ 23–24.) The proposed rabbinical institute would also include housing for students and their families. (Tauber Decl. ¶ 8; C. Babad Decl. ¶ 9.)

Tartikov's purpose is to develop and operate a rabbinical institute to train Orthodox Jewish rabbis to become qualified *dayanim*, rabbis who serve as judges in Jewish religious courts. (Tauber Decl. ¶ 10; C. Babad Decl. ¶ 11.) According to Plaintiffs, members of the Hasidic Jewish community are religiously precluded from resolving certain internal disputes in secular courts. (*See, e.g.*, Declaration of Steven H. Hershkowitz in Supp. of Pls.' Mot. ("Hershkowitz Decl.") ¶ 25.) Qualification as a *dayan* requires immersion in a Torah community consisting of a residential living and learning environment designed to minimize outside distractions and enable students to devote themselves fully to the study and mastery of the *Shulchan Aruch*, the Code of Jewish Law. (*Id*. ¶ 75.) Tartikov thus seeks to develop and operate a religious campus where students will be completely dedicated to their religious obligations of mastering Jewish law and meeting their religious obligations to their families. (*Id*.) This goal, however, has been constrained by the Village's Zoning Code (the "Village Code").

## II.   The Village's Zoning Laws and Restrictions on Educational Institutions

The Village Code has restricted land use to single-family residences on one-acre lots since its formation in 1967. (ECF No. 50, "Defs.' Opp.," at 3.) This zoning designation is known as "R-40." Village Code § 130-5. The stated purpose of the Village Code is to preserve the Village's rural and low-density residential character. *Id*. § 130-2. The entire Village, including the Subject Property purchased by Tartikov, requires a minimum lot size of 40,000 square feet (approximately one acre) for the development of single-family residences. *Id*. § 130-5.

As relevant here, educational institutions—including dormitories, houses of worship, and other enumerated uses—are permitted only by special use permit, with jurisdiction divided between the Board and ZBA. *Id*. §§ 130-10, 130-11. The ZBA also has authority to grant use and area variances. *Id*. § 130-28(D). A property owner may alternatively petition to amend the zoning

3

law or request a zone change if the proposed use is neither permitted by special use permit nor suitable for a variance.  *Id*. §§ 130-25–130-45.  At issue here is the Village Code's definition of "educational institutions" and "dormitories."

On January 22, 2001, the Board adopted Local Law No. 1 of 2001.  (Declaration of Joseph Churgin in Supp. of Pls.' Mot. ("Churgin Decl.") Ex. 25.)  For the first time, the law defined "educational institution" as "[a]ny school or other organization or institution conducting a regularly scheduled comprehensive curriculum of academic and/or alternative vocational instruction similar to that furnished by kindergartens, primary[,] or secondary schools and operating under the Education Law of New York State, and duly licensed by the State of New York."  (*Id*. at 2.)  Notably, the law omitted any reference to dormitories.  (*Id*.)  This omission, however, conflicted with established New York law recognizing that educational institutions generally may locate on their property facilities for accessory uses reasonably associated with their educational purpose.  *See, e.g.*, *Town of Islip v. Dowling Coll.*, 275 A.D.2d 366, 367 (2000) (educational institutions may engage in and locate on their property facilities for social, recreational, athletic, and other accessory uses reasonably associated with their educational purposes); *Ass'n of Zone A & B Homeowners Subsidiary, Inc. v. Zoning Bd. of Appeals of City of Long Beach*, 298 A.D.2d 583, 584 (2002) (affirming that educational institutions are generally permitted to engage in accessory uses on their property).

In light of the inconsistency between the Village Code and New York law, the Board amended Local Law No. 1 of 2001 and adopted Local Law No. 5 of 2004.  (Churgin Decl., Ex. 26.)  The amended law redefined "educational institution" as "[a]ny private or religious elementary, junior high or high school, college, graduate[,] or post-graduate school conducting a full-time curriculum of instruction… *accredited by the New York State Education Department or*

*similar recognized accrediting agency*." (*Id*. at 1 (emphasis added)). The new accreditation requirement imposed a substantial burden on Tartikov. Prior to the enactment of the amended law, Tartikov was not accredited. (*See, e.g.*, Tauber Decl. ¶ 65.) Moreover, at that time, the New York State Education Department no longer provided accreditation and therefore could not accredit Tartikov. (Declaration of Kevin Kinser in Supp. of Pls.' Mot. ("Kinser Decl.") ¶¶ 7–9.) Tartikov also could not obtain accreditation through private means. The only private accrediting agency "relevant to [Tartikov]'s program of study" is the Association of Advanced Rabbinical and Talmudic Schools ("AARTS"). *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83, 100 (2d Cir. Dec. 20, 2019). However, AARTS requires that Tartikov must "have been in continuous existence as an institution of higher education for a period of two years" before being accredited, and it cannot operate in the Village if it is not accredited. (Kinser Decl., Ex. B at 11.) It follows that "Tartikov must be operational before it can be accredited, but Tartikov cannot become operational until it obtains a special use permit, which requires accreditation." *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 280 F. Supp. 3d 426, 476 (S.D.N.Y. Dec. 7, 2017).

The amended law imposed an additional restriction on Tartikov by prohibiting "separate cooking, dining or housekeeping facilities" and "[s]ingle family, two-family and/or multi-family dwelling units" within dormitories. (Churgin Decl., Ex. 26 at 1.) This prohibition further prevents Tartikov from constructing its rabbinical institute because prospective students intend to reside on the Subject Property with their families.[1] (Tauber Decl. ¶ 8; C. Babad Decl. ¶ 9.)

### III. Tartikov's Previous Legal Challenges to the Village's Restrictions

---

[1] On January 22, 2007, the Board further restricted dormitories through the adoption of Local Law No. 1 of 2007, which provides that (1) "[a] dormitory building shall not occupy more than twenty (20) percent of the total square footage of all buildings on the lot," and (2) the maximum height for a dormitory building is 25 feet. (Churgin Decl., Ex. 37.)

Due to the Village Code, Tartikov was prevented from constructing its rabbinical institute. As a result, Tartikov sued the Village on July 10, 2007, alleging, *inter alia*, that the 2001 and 2004 Local Laws violated the RLUIPA, FHA, the First Amendment of the Federal Constitution, and the Freedom of Worship provision of the New York Constitution. (Churgin Decl., Ex. 39.) The District Court ultimately concluded that Plaintiffs successfully established each count. *See Tartikov*, 280 F. Supp. 3d at 449. Defendants subsequently appealed. *Tartikov*, 945 F.3d at 88. On appeal, however, the Second Circuit did not address the merits of the Challenged Laws because Plaintiffs lacked standing, as Tartikov had not submitted a formal proposal for the building project, applied for a permit, or engaged in "any other conduct that would implicate or invoke the operation of the challenged zoning laws." *Id.* at 110.

In response to the Second Circuit's decision, Tartikov submitted a text amendment petition to the Village, requesting that, under Village Code §§ 130-35–45, the Board repeal the Challenged Laws. (ECF No. 49, "Pls.' Mem.," at 8.) In February 2020, the Board declined to formally consider Tartikov's petition. (*Id.*) Plaintiffs subsequently filed another lawsuit in 2020 challenging that denial. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 2021 WL 4392489, at *1 (S.D.N.Y. Sept. 24, 2021). The District Court dismissed the 2020 lawsuit, finding again that "Plaintiffs have not alleged a cognizable injury and have not received a final decision from the Village as to the Challenged Laws." *Id.* at *10. The Second Circuit affirmed, holding that "[t]he petition said nothing at all about Tartikov's desired land use. For this reason, the Board's decision not to consider the petition cannot be considered its final decision on Tartikov's particular development plans." *Congregation Rabbinical Coll. of Tartikov v. Vill. of Pomona*, 2022 WL 1697660, at *2 (2d Cir. May 27, 2022).

**IV.    Tartikov's Continued Attempts to Construct the Rabbinical Institute**

Before the Second Circuit issued an opinion, Tartikov continued its efforts to construct its rabbinical institute. On January 7, 2021, Tartikov submitted a Request for Interpretation to Defendant Louis Zummo, the Village's Building Inspector, seeking a determination as to whether a non-accredited rabbinical institute with adult student housing would be permitted in the Village and, if so, how the relevant issues would be resolved. (Churgin Decl., Ex. 1.) The Village informed Tartikov, however, that Defendant Zummo would not be responding. (*Id*. Ex. 2.) Tartikov subsequently appealed to the ZBA on August 31, 2021, but the ZBA similarly declined to review the appeal citing a lack of jurisdiction. (*Id*. Exs. 3–4.) Tartikov again submitted a Request for Interpretation for a text amendment on March 11, 2021, seeking the same relief as in the January 7, 2021 request, but the Village again declined to review the petition on November 28, 2022. (*Id*. Ex. 5.)

Following these rejections and the Second Circuit's decision, Plaintiffs submitted four applications and petitions detailing their "desired land use" and "particular development plans." (Churgin Decl., Exs. 6–9.) The submissions included: (1) a special permit application; (2) a site plan application; (3) an application for use variances; and (4) a zone change petition to build a non-accredited rabbinical institute with housing for adult students and their families. (*Id*.) Over the next year, all four submissions were denied,[2] primarily on the grounds that an unaccredited educational institution is ineligible for a use variance, site plan approval, or special permit.[3]

---

[2] On December 11, 2023, Defendant Zummo rejected Tartikov's October 19, 2023 application for use variances as premature. (Churgin Decl., Ex. 10.) The Board subsequently declined on March 25, 2024 to consider Tartikov's October 19, 2023 zone change petition. (Churgin Decl. ¶¶ 26–29.) On April 1, 2024, Defendant Zummo denied the special permit and site plan applications in a letter to Tartikov's attorney. (Churgin Decl., Ex. 11.) Tartikov then submitted to the ZBA, on April 26, 2024, an application for use variances along with notices of appeal of the denials of its special permit and site plan applications. (*Id*. Exs. 12–14.) On January 22, 2025, the ZBA denied the use variance application, and both appeals. (*Id*. Ex. 20.)

[3] Plaintiffs also allege that the ZBA delayed its production of the Full Environmental Assessment Form until January 22, 2025, which is required to establish Tartikov's rabbinical institute. (Churgin Dec. ¶¶ 38–42, 46, 51, 57, 62–64, 66–67.)

7

**PROCEDURAL HISTORY**

Plaintiffs commenced this action on February 20, 2025.  (ECF No. 1.)  Plaintiffs thereafter filed the First Amended Complaint on April 11, 2025.  (ECF No. 16.)  On the same date, Plaintiffs moved for a preliminary injunction.  (ECF No. 38.)  Defendants opposed the Motion and filed a cross-motion to dismiss the First Amended Complaint.  (ECF No. 50.)  Plaintiffs then filed a reply in further support of the Motion and an opposition to Defendants' Motion to Dismiss.  (ECF No. 51.)  Approximately one month later, Plaintiffs filed the Second Amended Complaint, which rendered Defendants' pending Motion to Dismiss the First Amended Complaint moot.  (ECF No. 69.)  Although Defendants' Motion to Dismiss the Second Amended Complaint was fully briefed as of January 20, 2026, (*see* ECF Nos. 84–88), the Court addresses only Plaintiffs' Motion for a Preliminary Injunction.

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  "A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or… sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faively Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d

Cir. 2009); *see also Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012).  "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Faively*, 559 F.3d at 118 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction."  *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).

With respect to the level of persuasion required to obtain a preliminary injunction, courts have distinguished between motions seeking prohibitory relief and those seeking mandatory relief.  Where a party seeks a mandatory injunction "altering, rather than maintaining, the status quo," that party "must meet [a] more rigorous standard."  *Almontaser v. N.Y. City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where… an injunction will alter, rather than maintain, the status quo.").  The moving party must establish a "'clear' or 'substantial' likelihood of success," or show that "extreme or very serious damage" would result in the absence of injunctive relief.  *Tom Doherty Assocs., Inc.*, 60 F.3d at 34.

## DISCUSSION

Plaintiffs seek a preliminary injunction directing Defendants to begin processing Tartikov's site plan and special permit applications to develop the Subject Property as a rabbinical institute, without regard to Tartikov's accreditation status and permitting student family housing.  (Pls.' Mem. at 1.)  Because Plaintiffs seek to alter, rather than preserve, the status quo, as described in

more detail below, the Court evaluates the Motion under the heightened standard applicable to mandatory injunctive relief.

I. **Availability of Preliminary Relief Where the Requested Injunction Substantially Overlaps with Ultimate Relief**

As a preliminary matter, Defendants argue that the Motion must be denied because Plaintiffs seek the ultimate relief in the case, which is not available by means of a preliminary injunction. (Defs.' Opp. at 23.) In one sense, Defendants are correct that Plaintiffs seek relief that substantially overlaps with the ultimate relief requested in this action. Plaintiffs move for a preliminary injunction requiring Defendants to begin processing Tartikov's site plan and special permit applications to develop the Subject Property as a rabbinical institute without consideration of Tartikov's accreditation status and permitting student family housing. (Pls.' Mem. at 1.) To grant such relief, the Court would have to enjoin Defendants from enforcing the Challenged Laws to the extent those laws prevent Defendants from processing Tartikov's various petitions. It is also of no momentum, as Plaintiffs argue, that they are not presently seeking the monetary damages requested in the Second Amended Complaint. (ECF No. 51, "Pls.' Reply," at 8.) Defendants denied Tartikov's submissions primarily because Tartikov's unaccredited status conflicts with the Challenged Laws. (Defs.' Opp. at 1.)

With that said, however, Defendants misstate the governing legal standard. Defendants are correct that "[t]he purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks. It is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *WarnerVision Ent. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996). But Defendants are incorrect insofar as they suggest that a court may not issue a preliminary injunction where a movant seeks relief that substantially overlaps with ultimate relief. To the contrary, the Second Circuit has articulated that where a movant seeks "substantially

10

all the relief sought and that relief cannot be undone even if the [non-moving party] prevails at a trial on the merits," courts apply a heightened standard. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Tom Doherty Assocs., Inc.*, 60 F.3d at 33–34). Under that heightened standard, the movant must (1) show a "clear" or "substantial" likelihood of success on the merits, (2) make a "strong showing" of irreparable harm, and (3) demonstrate that the preliminary injunction is in the public interest. (*Id.*)

Applying this standard, the Court turns to consider whether Plaintiffs have satisfied the heightened showing required where a movant seeks substantially all of the relief sought in the action.

## II. Irreparable Harm and the Impact of Unreasonable Delay

As irreparable harm is the foremost consideration in determining whether a preliminary injunction is warranted, the Court begins its analysis with this factor. *See JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) ("the moving party must first demonstrate that irreparable harm would be likely in the absence of a preliminary injunction before the other requirements for the issuance of a preliminary injunction will be considered."). Defendants notably argue that Plaintiffs will suffer no irreparable harm due to their unreasonable delay in seeking preliminary injunctive relief. (Defs.' Opp. at 25.)

As an initial matter, "the significant delay in bringing [a] preliminary injunction motion counsels against a finding of irreparable injury." *UGX Brands, LLC v. City of Norfolk*, 2025 WL 2083797, at *2 (S.D.N.Y. July 24, 2025) (citing *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 300 (S.D.N.Y. 2021)). Indeed, unreasonable delay may "preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no

irreparable injury." *Lerario v. Newyork-Presbyterian/Queens*, 2023 WL 4847141, at *6 (S.D.N.Y. July 28, 2023) (citing *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)); *accord Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (same). Plaintiffs contend that the Motion is timely because (1) the ZBA only denied Tartikov's variance applications on January 22, 2025, and (2) prior court orders determined that Plaintiffs lacked an injury-in-fact, thereby precluding earlier injunctive relief. (Pls.' Reply at 10.)

Tartikov purchased the Subject Property in August 2004. (Tauber Decl. ¶¶ 22–26; C. Babad Decl. ¶¶ 23–24.) Plaintiffs have also been litigating issues relating to the Subject Property for nearly two decades. (Churgin Decl., Ex. 39.) The Court acknowledges that the Challenged Laws have impeded Tartikov from establishing its rabbinical institute on the Subject Property since that time. *Tartikov*, 280 F. Supp. 3d at 476. The Court further recognizes that this action differs from prior litigation insofar as Tartikov has now submitted various petitions detailing its proposed construction of a rabbinical institute. (Churgin Decl., Exs. 6–9.) The Court does not disregard these distinctions. Under these circumstances, however, it is difficult to conclude that Plaintiffs now face irreparable harm where Tartikov purchased the Subject Property more than twenty years ago.

First, even accepting Plaintiffs' proposed timeline, the delay remains substantial. Although the ZBA denied the variance applications on January 22, 2025, this action was not commenced until February 20, 2025. (ECF No. 1.) Plaintiffs did not serve the present Motion until April 11, 2025—nearly three months after the ZBA's decision. (ECF No. 38.) Courts "typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Lerario*, 2023 WL 4847141, at *6 (quoting *Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998); *see also Weight Watchers Int'l v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir.

12

2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction."); *BakeMark USA LLC v. Negron*, 2024 WL 1075280, at *23 (S.D.N.Y. Jan. 12, 2024) ("There is no bright-line rule for how much delay is too much, but courts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."); *Two Hands IP LLC*, 563 F. Supp. 3d at 300 (finding delay of "more than three months" counseled against a finding of irreparable injury).

Second, Plaintiffs are correct that prior decisions issued by the District Court and the Second Circuit held that Plaintiffs lacked standing. *See, e.g.*, *Tartikov*, 2022 WL 1697660, at *2. However, those rulings do not negate the undisputed fact that Tartikov purchased the Subject Property in August 2004 and, due to the Challenged Laws, has been unable to establish its rabbinical institute on the property since that time. (Tauber Decl. ¶¶ 22–26; C. Babad Decl. ¶¶ 23–24.) Having waited more than two decades to seek this extraordinary relief—despite litigating this dispute since July 10, 2007—Plaintiffs cannot now belatedly cry urgency. *See Prisoners' Legal Servs. of New York v. U.S. Dep't of Homeland Sec.*, 2025 WL 2466664, at *13 (S.D.N.Y. Aug. 5, 2025) ("[L]ength of delay is measured from the time the plaintiff originally learned of the alleged violation or is put on notice thereof, not when the irreparable injury allegedly begins") (quoting *Two Hands IP LLC*, 563 F. Supp. at 301). Such delay is incompatible with a claim of imminent, irreparable harm.

Because Plaintiffs fail to demonstrate irreparable harm, the Court need not address the remaining preliminary injunction factors. *See Frommer v. MoneyLion Techs. Inc.*, 2023 WL 6850324, at *1 (S.D.N.Y. Oct. 17, 2023) ("[I]f a party fails to show irreparable harm, a court need

13

not even address the remaining elements."); *Monowise Ltd. Corp. v. Ozy Media, Inc.*, 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018) (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 38.

Dated: February 23, 2026
      White Plains, NY

SO ORDERED,

_____
Nelson S. Román, U.S.D.J.